UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

---

| | |
|---|---|
| MICHIGAN DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY and ATTORNEY GENERAL DANA NESSEL, on behalf of the People of the State of Michigan<br><br>Plaintiffs,<br><br>v.<br><br>GERALD R. FORD INTERNATIONAL AIRPORT AUTHORITY,<br><br>Defendant. | Case No. 1:23-cv-01068-JMB-RSK<br><br>Hon. Jane M. Beckering |

---

| | |
|---|---|
| Margaret A. Bettenhausen (P75046)<br>Keith D. Underkoffler (P84854)<br>Assistant Attorneys General<br>Michigan Department of Attorney General<br>Environment, Natural Resources, and<br>Agriculture Division<br>P.O. Box 30755<br>Lansing, MI 48909<br>(517) 335-7664<br>bettenhausenm@michigan.gov<br>underkofflerk@michigan.gov<br>*Attorneys for Plaintiffs* | Charles M. Denton (P33269)<br>Sydney O. Imes (P86532)<br>BARNES & THORNBURG LLP<br>171 Monroe Ave NW, Ste. 1000<br>Grand Rapids, Michigan 495503<br>(616) 742-3974<br>cdenton@btlaw.com<br>Sydney.Imes@btlaw.com<br><br>John A. Sheehan<br>Earth & Water Law LLC<br>1455 Pennsylvania Ave. N.W., Suite 400<br>Washington, DC 20004<br>(301) 980-5032<br>john.sheehan@earthandwatergroup.com<br><br>*Attorneys for Defendant* |

---

**DEFENDANT GERALD R. FORD INTERNATIONAL AIRPORT AUTHORITY'S BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE ORDER REMANDING THIS CASE TO STATE COURT**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................ 2

II. STATEMENT OF FACTS .......................................................................................... 2

III. ARGUMENT ............................................................................................................... 7

    A. The Standard for Reconsideration. ........................................................................ 7

    B. The Remand Order Did Not Fully Articulate the Proper Standard for Determining Whether the Removing Party "Acted Under" a Federal Officer. ........................................ 8

        1. The FAA was functioning as GFIAA's superior and GFIAA was subject to FAA's guidance and control and therefore GFIAA was "acting under" the FAA. .................. 9

        2. Contrary to the finding in the Remand Order, the actions which form the basis for EGLE's complaint were performed under color of federal office. ............................ 11

    C. The Purpose of the Federal Officer Removal Statute is Served by Removal to Federal Court to Protect the Federal Government from Interference with its Operations. .................................................................................................................... 12

IV. CONCLUSION ......................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re: Aqueous Film-Forming Foams Prod. Liab. Litig.*,
    357 F.Supp. 3d 1391 (J.P.M.L. 2018)................................................................................4

*Arizona v. Manypenny*,
    451 U.S. 232 (1981)............................................................................................................8

*Compuware Corp. v. Serena Software Intern., Inc.*,
    77 F.Supp.2d 816 (6th Cir. 1999).......................................................................................7

*Greene v. B.F. Goodrich Avionics Systems, Inc.*,
    409 F.3d 784 (6th Cir. 2005) ...........................................................................................10

*Hudak v. Elmcroft of Sagamore Hills*,
    58 F. 4th 845 (6th Cir. 2023)..............................................................................................7

*Mays v. Flint*,
    871 F.3d 437 (6th Cir. 2017).................................................................................8, 11, 12

*Watson v. Philip Morris Cos.*
    551 U.S. 142 (2007).........................................................................................1, 8, 12, 13

*Willingham v. Morgan*,
    395 U.S. 402 (1969)...........................................................................................................8

**Statutes**

28 U.S.C. § 1441..............................................................................................................................8

28 U.S.C. § 1442....................................................................................................................2, 8, 11

Counts under Michigan's Natural Resources and Environmental Protection Act..........................2

Federal Aviation Act, 49 U.S.C. §§ 106 et seq................................................................................3

MCL § 259.116................................................................................................................................4

MCL § 259.143................................................................................................................................4

**Other Authorities**

14 CFR Part 139...................................................................................................................... *passim*

14 CFR § 139-101............................................................................................................................3

14 CFR § 139.1(a) ........................................................................................................................3

14 CFR § 139.7 ............................................................................................................................3

14 CFR § 139.317 ........................................................................................................................4

**Concise Statement of Reasons in Support of Defendant's Motion for Reconsideration**

Local Rule 7.4(a) permits a party to seek reconsideration of a Court's Order by demonstrating that a palpable or plain defect occurred in the Court's ruling and that a different disposition of the case must result from a correction thereof. Defendant respectfully submits that the Court's December 4, 2023 Order ("Remand Order") should be reconsidered in light of the following plain defects which would lead to a different disposition of the case and establish this Court's federal question jurisdiction:

1. The Remand Order did not fully and correctly articulate and apply the proper standard for determining whether the removing party "acted under" a federal officer by not recognizing the Supreme Court's direction that the words "acting under" are "broad" and are to be "liberally construed" and that an usually close relationship satisfies the removal statute. *Watson v. Philip Morris Cos.*, 551 U.S. 142 (2007).

2. The Remand Order's conclusion that the Defendant was merely complying with the law incorrectly characterizes the nature of the relationship between the Federal Aviation Administration ("FAA") and the Gerald R. Ford International Airport Authority ("GFIAA") and overlooked key facts about the nature of that relationship.

3. On the issue of whether the Defendant performed actions under color of federal office, the Remand Order suffers from a palpable defect because the Order states that the Defendant did not conduct "its training emergency responses, and equipment testing with AFFF at an FAA officer's direction" (Remand Order at 7-8 [ECF No. 13, PageID.150-151]) when the Defendant in fact allege that FAA inspectors directed the spraying and release of AFFF, in addition to the other FAA certificate mandates.

## I.  INTRODUCTION

This is an action brought by the Michigan Department of Environment, Great Lakes, and Energy, et. al., ("EGLE" or "Plaintiffs") alleging two Counts under Michigan's Natural Resources and Environmental Protection Act ("NREPA").  (Compl. ¶¶ 1-4 [ECF No. 1-1, PageID.13]). EGLE alleges that GFIAA released per- and polyfluoroalkyl substances ("PFAS") as a result of its use of aqueous film forming foams ("AFFF").  (*Id*. ¶¶ 1-4, 18-22).  The Complaint alleges Defendant's activities causing the PFAS release were firefighting training, equipment testing, and emergency response using AFFF containing PFAS. EGLE initially brought its case in state court. (Compl. [ECF No. 1-1]).  GFIAA removed the case to this Federal Court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).  (Notice of Removal [ECF No. 1]).  EGLE filed a Motion to Remand, (Remand Motion [ECF No. 6]), which was granted by this Court on December 4, 2023, (Remand Order [ECF No. 13]).  The Remand Order concluded that GFIAA did not (1) establish that it was acting under a federal office and (2) did not establish that its actions were performed under color of federal office.  (*Id*. at PageID.148-152).  As demonstrated below, the Court, in analyzing whether GFIAA was acting under a federal office or under color of federal office did not fully appreciate the nature of the relationship between the FAA and GFIAA such that a different disposition of the case must result from a correction thereof.  W.D. Mich. LCivR. 7.4(a).  This error may be rectified by granting this Motion for Reconsideration.

## II.  STATEMENT OF FACTS

In its Opposition to Plaintiffs' Motion to Remand the case to state court, Defendant GFIAA provided a background section describing key facts about the nature of the relationship between GFIAA and the FAA as it relates to the use of AFFF in the Airport's operations.  To more fully describe that relationship and the level of control and supervision exercised by FAA in support of

2

this motion for reconsideration, GFIAA is providing an affidavit from Lisa Carr, GFIAA's Public Safety & Operations Director, based on Ms. Carr's personal knowledge, GFIAA's business records and files, and the knowledge that she has generally acquired in the course of her duties with GFIAA.  Aff. 1-3. The following statement of facts incorporates both facts and information included in GFIAA's opposition brief as well as additional supplemental information contained in the affidavit.

GFIAA has operated the Gerald R. Ford International Airport (the "Airport") in Grand Rapids since 2016.[1]  Aff. 3.  The Airport operates under the Federal Aviation Act, 49 U.S.C. §§ 106 et seq.  Aff. 4.  FAA's mission includes providing the safest aerospace in the world, with a goal of reaching the next level of safety.  https://www.faa.gov/about/mission (last accessed on December 18, 2023).  The specific regulations implementing the Federal Aviation Act are found at 14 CFR Part 139 (Part 139) which prescribe "rules" governing the certification and operation of public use airports serving scheduled aircraft configured for more than nine passenger seats and unscheduled aircraft configured for at least 31 passenger seats.  14 CFR § 139.1(a).  Airports must apply to the FAA to obtain an Airport Operating Certificate.  Aff. 4.  No person may operate a Part 139 airport without an Airport Operating Certificate.  14 CFR § 139-101.  GFIAA holds a valid FAA Operating Certificate.  Aff. 4.  (ECF No. 10-1, PageID.107.)

Certificate holders must comply with the requirements in Part 139 in a manner authorized by the FAA Administrator.  14 CFR § 139.7.  FAA Advisory Circulars and "CertAlerts" contain methods and procedures for compliance with Part 139 that are acceptable to the Administrator. *Id*.; Aff. 4; *see e.g.* CertAlert No. 19-01 Aqueous Film Forming Foam (AFFF) Testing at Certificated Part 139 Airports (Jan. 17, 2019) (ECF No. 10-3) and *Airport Certification Program*

---

[1] Before 2016, Kent County operated the Airport.  (ECF No. 10-1).

3

*Handbook* at https://www.faa.gov/documentLibrary/media/Order/order-5280-5D-airport-certification.pdf ("Inspector Handbook"). [2] Federal funding also requires GFIAA to demonstrate that it has met FAA requirements. Aff. 4.

In addition, Michigan law requires commercial airports to comply with FAA standards. *See* Mich Admin Code R 259.245; MCL § 259.116; MCL § 259.143. Specifically, the Michigan Aeronautics Code requires that airports have an FAA Operating Certificate to receive an air carrier license in Michigan. *Id*. Michigan's Department of Transportation has issued an Airport License to GFIAA, which requires compliance with Part 139 and related FAA mandates. *Id*.; Aff. 5.

AFFF is used to extinguish liquid fuel fires. *In re: Aqueous Film-Forming Foams Prod. Liab. Litig.*, 357 F.Supp. 3d 1391, 1392 (J.P.M.L. 2018). It was originally developed for the military in the 1940's and its design and manufacture has been governed by rigorous military specifications established by Naval Sea Systems Command. (*See* ECF No. 10-2 Military Specification Fire Extinguishing Agent, AFFF MIL-F-24385 ("MIL-SPEC AFFF")).

The FAA required GFIAA and other Part 139 certificated airports to use AFFF that meets the Department of Defense ("DoD") minimum performance requirements contained in the Naval Sea Systems Command "MIL-SPEC" standard Mil-F-24385; Aff. 7. MIL-SPEC Mil-F-24385 only allowed AFFF that contained PFAS and that MIL-SPEC was in effect at all times pertinent to this case. *See* 14 CFR § 139.317; (*See, e.g.* ECF 10-3, January 2019 CertAlert).[3] Relying on the Department of Defense MIL-SPEC, the FAA determined that AFFF containing PFAS was

---

[2] The "purpose" of the Inspector Handbook is: "This Order provides FAA personnel with the policies, standards, and procedures for conducting the Airport Certification Program. This Order helps ensure standardization and uniformity in the application of the program and in enforcing Title 14 Code of Federal Regulations (CFR), Part 139, Certification of Airports (Part 139)."

[3] Congress recently required the Department of Defense to modify the MIL-SPEC and approve fluorine free firefighting foam and DoD approved the first such foam in September 2023.

4

essential to fire suppression at Part 139 airports.[4] Even in 2019, when the FAA was aware of environmental concerns related to PFAS, it still did not identify or approve for use any fluorine-free foams that were able to provide the same level of fire suppression, safety, flexibility, and performance as the existing MIL-SPEC AFFF. (ECF 10-3 at PageID.123, January 2019 CertAlert) Therefore, to obtain an FAA Operating Certificate and comply with Michigan state law governing its Airport License, all Part 139 airport operators in Michigan must employ AFFF containing PFAS in all aircraft rescue and firefighting equipment as commanded by FAA. Aff. 7.

AFFF with PFAS was required by the FAA to be utilized in the firefighting trainings, equipment testing, calibrations, FAA inspections, and in response to emergencies at GFIAA. Aff. 9. Specifically, GFIAA was obligated to use AFFF for emergency response, personnel training and equipment testing and calibration. *Id.* GFIAA has been routinely inspected by FAA in order to confirm, among other things, that the appropriate AFFF has been used precisely as the FAA mandates. *Id*. at 9-10. These FAA inspections occur on an annual basis to ensure GFIAA meets Part 139 mandates. *Id.* at 10; see also Inspector Handbook at 4.18.26.5 (regarding discharge of agents during timed response drill) and 4.18.27 (regarding AFFF foam proportioning system testing). The FAA inspections include airfield inspections, equipment review, and paperwork review. *Id.* During these inspections, the FAA inspectors review GFIAA's records of foam discharge for calibration. *Id.* The inspectors also confirm proportioning, and periodically require GFIAA to spray AFFF onto the ground to demonstrate to FAA inspectors that GFIAA is able to perform appropriate refractometer testing and that recorded test results and records are accurate. *Id.* Following these multi-day inspections, FAA and GFIAA would debrief to encapsulate the findings and any recommendations. *Id*. at 11. Multiple inspectors precisely reviewed how GFIAA

---

[4] See also, *e.g.*, CertAlert No. 06-02 (*Aqueous Film Forming Foam (AFFF) meeting MIL-F-24385*) (attached as Exhibit 1).

5

operated the Airport, including but not limited to, prescribing the precise AFFF activities alleged by Plaintiffs to be responsible for causing the PFAS contamination at issue. *Id.* at 6, 8-16.

The FAA requires firefighting vehicle system testing intervals occur within six months of the annual FAA certification safety inspection. *Id*. at 10.  If an airport operator has not conducted testing within FAA-specified intervals, the FAA inspectors require the airport operator to discharge AFFF onto the ground during the airport's periodic inspections. *Id*.  This FAA-specified testing ensured the vehicle was proportioning the AFFF and water correctly, demonstrated the operator was knowledgeable about the equipment, and ensured the airport could respond to emergencies pursuant to federal requirements. *Id*.  GFIAA did not have a choice as to what type of AFFF it purchased and used, or whether it dispensed AFFF foam during equipment testing. *Id*. at 12.  Prior to FAA issuing Certification Alert (CertAlert) 19-01 on January 17, 2019, FAA required AFFF equipment testing that included discharging of AFFF foam onto the ground. *Id*. at 10.  In-line testing systems that did not require discharge were only acceptable to FAA after it issued Cert-Alert 19-01 in 2019:

> Last year, the FAA Technical Center initiated research on three different types of AFFF testing equipment that do not require foam to be dispensed on the ground. This testing is now complete, and the FAA will accept use of these systems, shown in paragraph 3(a) below, as options to test the AFFF function on ARFF vehicles.

(ECF No. 10-3, PageID.124; Cert-Alert 19-01 at 2.); Aff. 12.

The FAA dictates exactly how, at a minimum, GFIAA conducted training, equipment testing, and emergency response activities using PFAS AFFF.  Aff. 16.  If GFIAA failed to comply with even one section of FAA mandates, then GFIAA risked losing its Airport Operating Certificate, which would mean ceasing commercial aviation services.  The alleged releases are inextricably tied to FAA's prescriptive safety mandates imposed on GFIAA as a Part 139 airport. Had GFIAA not discharged AFFF to the ground during testing, it would have been acting in

contravention to FAA mandated and approved testing methods. *Id*. at 10. Subjection, guidance, and control were all part of the relationship between GFIAA and FAA.

Essentially then, in utilizing AFFF containing PFAS, GFIAA was assisting FAA in carrying out its duties to maintain national aviation system safety. The federal and state government required GFIAA to use and discharge MIL-SPEC AFFF containing PFAS and GFIAA was obligated to do so. Any GFIAA failure to follow FAA's requirements for firefighting using AFFF with PFAS would have violated both the FAA Certificate and the MDOT License. *Id*. at 5. Had GFIAA not acted precisely as FAA dictated, there would be two alternatives: (1) GFIAA could complete "corrective action" issued by the FAA which would have included having and discharging AFFF for training, certification, and firefighting operations, or (2) GFIAA would lose its Part 139 certificate status and cease operating.[5]

### III.  ARGUMENT

**A.    The Standard for Reconsideration.**

Under W.D. LCiv R 7.4, a party seeking reconsideration must demonstrate that the Court's decision under consideration was based on a palpable defect by which the Court was misled. A defect is palpable if it is easily perceptible, plain, obvious, readily visible, noticeable, patent, distinct, or manifest. *Compuware Corp. v. Serena Software Intern., Inc.*, 77 F.Supp.2d 816, 819 n.9 (6th Cir. 1999). The movant must show a palpable defect and that a different disposition of the case must result from correction of the defect. W.D. LCiv R 7.4(a).

---

[5] The Remand Order, citing to *Hudak v. Elmcroft,* 58 F. 4th 845 (6th Cir. 2023), appeared to downplay the significance of GFIAA's contention that it acted under the threat of having to cease operations if it did not comply with FAA's mandates. *Hudak*, however, is not instructive here because the setting in that case – an assisted living facility that only contended the removal statute applied "because it was subject to a series of regulations and other federal guidance" – lacks the detailed involvement of a federal agency as alleged in this case.

**B.     The Remand Order Did Not Fully Articulate the Proper Standard for Determining Whether the Removing Party "Acted Under" a Federal Officer.**

The federal officer removal statute allows a party to remove a civil action commenced in a State court to a federal district court when the private party is "acting under" a federal "agency" and its actions were performed under color of federal office. 28 U.S.C. § 1442(a)(1). Originally, the federal-officer removal statute covered only federal customs officials and "any other person aiding or assisting" those officials. *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 148 (2007). The statute was broadened over time to the current version but still requires a "triggering relationship between a private party and a federal officer." *Id*. at 148-149. While GFIAA has not been directly "hired" or "employed" by the FAA to handle AFFF, such a showing is not required under the federal-officer removal statute. The defendant's relationship with the federal government must be one where the government [was] functioning as the defendant's superior," *Mays v. Flint,* 871 F.3d 437, 444 (6th Cir. 2017), and "typically involves subjection, guidance, or control" where the private party's actions involve "an effort to assist, or to help carry out, the duties or tasks of the federal superior," *Watson*, 551 U.S. at 151-152.

The Remand Order, in reviewing the standard for removal, focused on Sixth Circuit cases addressing the general removal statute (28 U.S.C. § 1441) rather than on specific Supreme Court precedent construing the federal officer removal statute (28 U.S.C. § 1442). ECF No. 13, PageID.147. While Courts including the Sixth Circuit have recognized that removal statutes generally are to be strictly construed, the Supreme Court specifically addressed the standard for construing the federal officer removal statute stating: "[t]he words 'acting under' are broad, and this Court has made clear that the statute must be 'liberally construed.'" *Watson, 551 U.S. at 147, citing Colorado v. Symes*, 286 U.S. 510, 517 (1932)*; see Arizona v. Manypenny,* 451 U.S. 232 (1981)*; Willingham v. Morgan*, 395 U.S. 402, 406-407 (1969)*.* A broader liberal construction of

8

the "acting under" requirement when considered in light of the additional facts submitted with this motion leads to a different disposition of this case.

### 1. The FAA was functioning as GFIAA's superior and GFIAA was subject to FAA's guidance and control and therefore GFIAA was "acting under" the FAA.

The Remand Order determined that GFIAA "has merely shown that it was complying with the law." ECF No. 13, PageID.147. That determination fails to account for the fact that the FAA had nearly complete control of all GFIAA activities with regard to AFFF, actively participated in in-person reviews of GFIAA's procedures such that the relationship was one of supervisor and subordinate. With regard to the use of AFFF containing PFAS at the Airport, the FAA has clearly been acting as GFIAA's supervisor and has exerted its subjection, guidance, and control over GFIAA's actions in that regard and therefore, GFIAA has been "acting under the FAA." GFIAA has acted under specific orders from the FAA that mandated the use a specific formulation of AFFF developed by the DoD for fire-fighting practices.

Not only was GFIAA required to use a specific PFAS-based AFFF that FAA mandated, but GFIAA was required to follow the FAA's specifications regarding how GFIAA must conduct aircraft rescue and firefighting ("ARFF") operations using AFFF. Specifically, GFIAA was obligated to use AFFF with PFAS for emergency response, personnel training, and equipment calibration testing. Aff. 9. GFIAA was required to follow the FAA's directives; it could not enact its own scheme for firefighting activities at the Airport. GFIAA's continued status as a certificated, licensed airport under our national and state transportation system is dictated by strict compliance with FAA mandates.

In its "supervisory" role, the FAA conducted multi-day inspections on-site and oversaw the use and release of that AFFF. FAA inspections confirmed, among other things, that the appropriate AFFF has been used and used precisely as the FAA mandates. Aff. 10. During these

inspections, the FAA inspectors review GFIAA's records of foam discharge for calibration. *Id*. The inspectors also confirm proportioning, and periodically require GFIAA to spray AFFF to demonstrate to FAA inspectors that GFIAA is able to perform appropriate refractometer testing. The FAA recommends firefighting vehicle system testing intervals occur within six months of the FAA certification safety inspection. *Id*. If an airport operator has not conduct testing within specified intervals, the FAA inspectors <u>require</u> the airport operator to discharge AFFF during the airport's periodic inspections. *Id*. (emphasis added); *See* ECF No. 10-3 at PageID 122, CertAlert 19-01. The FAA inspections include airfield inspections, equipment review, and paperwork review. Aff. 10. Following these multi-day inspections, FAA and GFIAA would debrief to encapsulate the findings and revisions to GFIAA's operations. *Id*. at 11. Multiple inspectors precisely reviewed how GFIAA operated the Airport, including but not limited to, prescribing the precise AFFF activities alleged by Plaintiffs to be responsible for causing the PFAS contamination at issue. *Id*. at 6, 8-16. Even the federal funding GFIAA received from the FAA is contingent on GFIAA demonstrating that it met FAA AFFF requirements. *Id*. at 4.

The relationship between GFIAA and FAA is not merely one of regulatory interpretation and compliance. Federal law is so prescriptive regarding the standards of care for aviation safety that it preempts the field from state regulation. *Greene v. B.F. Goodrich Avionics Systems, Inc.*, 409 F.3d 784, 795 (6th Cir. 2005). Here, FAA goes well beyond its regulation of airports contained in the Code of Federal Regulations, Part 139, to order the use of a specifically formulated product and then it conducted in person oversight of how, when and where GFIAA conducted training exercises, tested and calibrated equipment. Going beyond Part 139, the basis for FAA's prescription of GFIAA's actions is through FAA's issuance of what are known as CertAlerts that are not generally subject to any notice and comment rulemaking. CertAlerts are handed down as

mandates from FAA without any input or comment by GFIAA or any other commercial airport. As such, this is not a normal regulatory process in which the regulatory agency and the regulated industry engage in a public process that allows for input by the regulated industry. Thus, GFIAA is not merely complying with the contents of 14 CFR Part 139 in the typical regulatory sense in which the regulated party can interpret its own compliance program. Instead, FAA supervises a prescriptive Part 139 compliance program through its CertAlerts to which GFIAA is treated as the subordinate.

FAA's relationship with GFIAA in this instance is a relationship where the federal government was "functioning as the defendant's superior" and thus GFIAA was acting under a federal agency. *Mays,* 871 F.3d at 444. Because the FAA dictated to GFIAA precisely how it must conduct ARFF operations and *actually participated in those operations*, GFIAA was acting under a federal agency and its actions were performed under color of federal office, providing the basis for the proper application of 28 U.S.C. § 1442(a)(1) and making federal jurisdiction appropriate in this Court.

  **2. Contrary to the finding in the Remand Order, the actions which form the basis for EGLE's complaint were performed under color of federal office.**

Plaintiffs assert that the complained-of acts are the <u>release</u> of PFAS substances onto the soil and that GFIAA's actions in that regard were not performed under color of federal office. Plaintiffs' Complaint as to the "activity" allegedly causing a release of PFAS are clear – the Airport used AFFF "during training, equipment testing, and emergency response" and those activities made GFIAA potentially responsible for PFAS releases. (Compl., ECF No. 1-1, PageID.14,16-17.) Because the FAA was dictating the AFFF formulation with PFAS and how GFIAA conducted training, equipment testing and emergency response activities using PFAS AFFF, the alleged actions that caused PFAS releases to GFIAA's property are inextricably tied to FAA's prescriptive

11

safety mandates imposed on GFIAA as a certificated Part 139 airport. As shown in CertAlert 19-01, FAA required discharges to the ground as part of testing until 2019 when it approved the use of in-line testing systems. The FAA was involved in every key action underlying EGLE's complaint and therefore these actions were performed under color of federal office.

C.  **The Purpose of the Federal Officer Removal Statute is Served by Removal to Federal Court to Protect the Federal Government from Interference with its Operations.**

In *Mays,* the Sixth Circuit retraces the history of federal officer removal as set forth by the Supreme Court in *Watson*. That includes situations in which "states that were antagonistic toward federal government operations might use state court proceedings to thwart the enforcement of federal law. *Mays* at 443. Prior to FAA issuing its CertAlert allowing self-contained equipment calibration options in 2019, releasing AFFF with PFAS for equipment calibration and documented compliance with Part 139 federal standards was required. Plaintiffs' state law claims are precisely an attempt to use state court proceedings to thwart compliance with federal law dictated by Part 139 in which GFIAA was a key spoke in our national air-transportation system. And over the many years preceding FAA's 2019 procedural changes, neither the federal government or the AFFF manufacturers informed GFIAA that there were any harms or repercussions associated with not acting as FAA mandated. Plaintiffs' 20-20 hindsight that somehow GFIAA should take alternative actions is a ploy to keep its case in State Court. The federal government and the AFFF manufacturers are battling over these key issues in the South Carolina MDL and those determinations in that Court directly impact GFIAA's case. If this case stays in state court, airports across the country will be stuck in the middle between various individual state mandates and FAA's more uniform national requirements that underlay our national aviation system. This "local prejudice" identified in *Watson* and recognized in *Mays* has the potential to interrupt and interfere with FAA's Congressional and other mandates if cases like this case remain in state court. The

12

situation that GFIAA finds itself in now is just the type of situation *Watson* recognized that the federal removal statute was intended to prevent – where state laws conflict with federal mandates putting the parties seeking to comply in an untenable situation.  In those circumstances, the federal officer removal statute makes clear that federal court jurisdiction is appropriate.

### IV.   CONCLUSION

As required by W.D. LCivR 7.4, GFIAA has demonstrated palpable and plain defects in the Remand Order which necessitate that a different disposition of the case must result from a correction thereof.  Therefore, GFIAA's Motion for Reconsideration should be granted.

BARNES & THORNBURG LLP

By: */s/ Charles M. Denton*
Charles M. Denton (P33269)
Sydney O. Imes (P86532)
BARNES & THORNBURG LLP
171 Monroe Ave NW, Ste. 1000
Grand Rapids, Michigan 495503
(616) 742-3974
cdenton@btlaw.com
Sydney.Imes@btlaw.com

*/s/ John A. Sheehan*
John A. Sheehan
Earth & Water Law LLC
1455 Pennsylvania Ave. N.W., Suite 400
Washington, DC 20004
(301) 980-5032
john.sheehan@earthandwatergroup.com

*Attorneys for Defendant*

Dated:  December 18, 2023

13

**CERTIFICATE OF SERVICE**

    I hereby certify that on December 18, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which provides notice to all attorneys of record.

                                      */s/ Charles M. Denton*
                                      Charles M. Denton